KENNETH H. WINE(#142385)
Hallinan & Wine
345 Franklin Street
San Francisco, CA  94102
Telephone:  (415) 621-2400
Facsimile: (415) 575-9930
email: kenwine@hotmail.com

Counsel for ADELAIDA CANACA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) <br> )<br> Plaintiff,          )<br> )<br> v.            )<br> )<br>ADELAIDA CANACA,          )<br> )<br> Defendant.         )<br>_____ ) | CR-23-250 CRB <br><br>**CHANGE OF PLEA AND SENTENCING MEMO OF DEFENDANT ADELAIDA CANACA**<br><br>Date: August 18, 2023<br>Time: 9:00 a.m.<br><br>HON. CHARLES R. BREYER |

**I.    Introduction**

On August 2, 2023, the police arrested Defendant Adelaide Canaca, age 22, for two street sales of fentanyl they observed over a 15 minute period.  On August 18, 2023 Ms. Canaca, aged 22, is expected to plead guilty under FRCrP 11(c)(1)(C) to Count One of the Information, possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1).  On that same date, in a break from normal sentencing routines, the parties intend to ask the Court for a Time Served sentence. It is expected that Ms. Canaca will be promptly deported back to Honduras, where her two children, Christa (age 2), and Jonielle (age 1) are awaiting her return.

The agreed guideline calculations are Base Level Offense of 26 and a 3 level reduction for acceptance of responsibility, a 2 level adjustment under the new guideline zero point offender guideline

U.S.S.G §4C1.1, for a final guideline range of 37-46 months. The parties have stipulated to a time served sentence, so if the Court is inclined to accept the plea, the defendant also requests the Court enter an order of release from custody that same day.

## II.     Factual Background

On August 2, 2023, Ms. Canaca was seen by DEA officers appearing to be selling small quantities of drugs in the Tenderloin. She was detained, searched, and was discovered with additional drugs, including crack cocaine and methamphetamine.  The parties have agreed to a joint FRCrP 11(c)(1)(C) resolution for time served, with 3 years of supervised release, and a stay away from the Tenderloin order.

Because this is a time served resolution, the parties further waive the preparation of a presentence report, and are prepared for sentencing.  Once released, Ms. Canaca will be deported to Honduras.

## III.    Argument

With the advent of *U.S. v. Booker*, 125 U.S. 738 (2005), the Court was finally restored with the power to sentence as it sees fit within the statutory framework of 18 U.S.C. § 3553(a).  The restoration of this power gives the Court real discretion to fashion a sentence *"sufficient but not greater than necessary"* to achieve the purpose of sentencing set forth in 18 U.S.C.§3553(a)(2) after considering:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];

(2) the need to reflect the seriousness of the offense, respect for the law, deterrence to criminal conduct, and protection of the public [§3553(a)(2)(A)-(C)]

(3) the kinds of sentences available [§3553(a)(3)];

(4) the advisory – but *non-mandatory* – Sentencing Guidelines [§3553(a)(4) and (a)(5)];

(5) the need to avoid unwarranted sentencing disparity among defendants with similar records and similar conduct [§3553(a)(6)]; and

(6) the need to provide restitution to any victim of the offense [§3553(a)(7)].

1  In this case, the Court must choose the minimally sufficient sentence to fulfill the purposes of sentencing based on a consideration of all §3553(a) factors. *Kimbrough v. U.S.*, 128 S.Ct. 558, 570 (2007). The Supreme Court has also rejected the notion that a sentence that amounts to a substantial variance from the Guidelines needs to be justified by extraordinary circumstances, holding instead that appellate courts must review all sentences, both within and without the Guidelines range, under a differential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 591 (2007).

Two subsequent Supreme Court decisions, *Spears v. United States*, 555 U.S. 261(2009) and *Nelson v. United States*, 555 U.S. 350 (2009), have reiterated that the Guidelines are now truly advisory and that there is no presumption at the district court level that a Guidelines sentence is inherently reasonable. As stated by the Seventh Circuit, "[t]he district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir.2007).

Ms. Canaca is 22 years old. She came from Honduras, where she lived in extreme poverty, and suffered both physical and sexual abuse as a child. She has been in the United States for a few months, and was put on the street to sell drugs. She was caring for her 2 children, both babies, and, frankly, was desperately in need of money to survive. She was seen selling drugs over a total time of 15 minutes. After her arrest, her children were taken by family members and returned to Honduras, where they await Ms. Canaca's return. She is ready to go home and see her babies.

While the sentencing guidelines briefly contemplate that youth may be relevant in determining whether a departure is warranted (*See,* U.S.S.G. 5H1.1), the guidelines have not specifically weighed in on the recent series of Supreme Court cases that discuss the clinical functioning of the juvenile mind. As the Court recognized, the same characteristics that render juveniles less culpable than adults — their immaturity, recklessness, and impetuosity — make them less likely to consider potential punishment. *Graham v. Florida,* 130 S.Ct. 2011, 2028 (2010).

As the Supreme Court noted when discussing juvenile crime:

"As compared to adults, juveniles have a "'lack of maturity and an underdeveloped sense of responsibility'"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed. These salient characteristics mean that "[*i*]*t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.*" Accordingly, *"juvenile offenders cannot with reliability be classified among the worst offenders. A juvenile is not absolved of responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult*." *Graham v. Florida*, 130 S.Ct. at 2022.(Citations omitted, emphasis added.)

The Supreme Court's adoption of a developmental model of culpability should be considered in all sentencing cases where the defendant is a juvenile, or, in Ms. Canaca's case, barely an adult with a childhood of suffering and deprivation that surely limited her development into a mature, responsible adult. *See*, e.g., DeBellis, *The Biological Effects of Childhood Trauma,* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3968319/pdf/nihms-555973.pdf ("The data to date strongly suggests that childhood trauma is associated with adverse brain development in multiple brain regions that negatively impact emotional and behavioral regulation, motivation, and cognitive function.")

As a final factor at sentencing, upon her release, Ms. Canaca will be deported to Mexico and never be allowed to return to the United States. *See, Jordan v. De George*, 341 U.S. 223, 232 (1951)(Jackson, J.) (deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts."). Deportation is a form of banishment, one of the oldest forms of punishment in existence. From the tale of Adam and Eve being thrown out of the Garden of Eden, to a defeated Napolean being sent to the Isle of Elba, banishment has served as powerful deterrent throughout history. "Ostracism" was used by the Ancient Greeks and Romans, where a capital defendant could choose to leave the country forever. Justices in Georgia, Mississipi, Arkansas, Florida and Kentucky still have intra-state exile as sentencing options. Clearly, deportation should also be considered a serious "collateral consequence", as it is a punishment from which Ms. Canaca can never escape.

### IV. Conclusion

Considering all the 3553(a) factors, the parties have agreed that a sentence of time served, and the subsequent deportation of Ms. Canaca will serve the interest of justice.

DATED: August 16, 2023                                  HALLINAN & WINE

/s/ Kenneth Wine
Kenneth H. Wine, Esq.
Attorney for Defendant
ADELAIDE CANACA